UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------------x

JULIE CASTILLO,

                                        Plaintiff,

                --against—

MORGAN STANLEY SMITH BARNEY LLC,

                                   Defendant.

----------------------------------------------------------------------- x

Civil Action No.:

COMPLAINT AND
JURY DEMAND

**Submitted by:**

LEONARD ZACK, ESQ.
LEONARD ZACK AND ASSOCIATES
Attorney for Plaintiff
505 Park Avenue, 18th Fl.
New York, NY 10022
(212) 754-4050 (voice)
leonardzack@lzack.com (email)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x

|  |  |
|---|---|
| JULIE CASTILLO, | Civil Action No.: |
|  | COMPLAINT AND |
|  | JURY DEMAND |
| Plaintiff, |  |
| --against— |  |
| MORGAN STANLEY SMITH BARNEY LLC, |  |
| Defendant. |  |

------------------------------------------------------------------------ x

Plaintiff Julie Castillo, brings claims for race[1], ethnicity, age and gender discrimination,
retaliation, unequal pay, defamation, negligent and intentional infliction of emotional distress
against Defendant, Morgan Stanley ("MSSB"), and hereby alleges as follows:

## PRELIMINARY STATEMENT

1.  Plaintiff, from the start of employment in January, 2011 until her termination in
2017 was the only female person of color (hereinafter, "POC") employed at the Palm
Beach Complex offices of Defendant. The Palm Beach Complex includes offices of
Defendant between Boca Raton and Stuart, Florida, and includes the West Palm Beach
branch.

---

[1] The Second Circuit has held that Hispanic is a race for purposes of both Title VII and Section
1981 (Village of Freeport v. Barrella, 814 F.3d 594 (2d Cir. 2016)).

2.  Employees in financial advisory positions in the Palm Beach Complex are organized into teams or are classified as solo practitioners.[2]  On information, approximately 75% of all financial services employees are organized into teams, with the remaining 25% as solo practitioners, leading to disparate teaming and pooling policies.

3.  Team members, in addition to having more resources are also entitled to corporate incentives that solo practitioners are excluded from, resulting in different compensation opportunities.

4.  Defendant claims to promote diversity and advancement of POC and female employees, however Defendant, it's parent and subsidiaries, has or is alleged to have a history of failing at both. *See Frazier, et. al. v. Morgan Stanley,* No. 16 Civ. 804 (RJS), Dkt No. 60 (S.D.N.Y. 2016)*; Booker et al. v. Morgan Stanley & Co. LLC, et al.*, No. 20 Civ. 02662 (KAM-LB), Dkt No. 1 (E.D.N.Y. 2020).

5.  On information, Defendant has time after time failed to address its racially and gender unjust policies in the Palm Beach Complex, resulting in very few female employees in financial advisory roles and even fewer POC employees being hired or achieving success.  Barriers are erected at every level to minimize promotions, earnings, and longevity of female POC's in Defendant's organization.

6.  Plaintiff is a female POC and during her period of employment was one of two Hispanic financial advisors in the Palm Beach Complex.  The only other Hispanic employee is male, and unlike Plaintiff, part of a team.

---

[2] Morgan Stanley teaming and pooling policy is one where each team member shares their client accounts and books of business with the rest of the team for their mutual benefit.  Teaming is arbitrary and at management discretion.

7.      Plaintiff, during her period of employment between 2011-2017, unlike her male and White counterparts, was constantly denied advancement, assistance, management support, and denied opportunities to participate in a team.

## APPLICABLE LAWS

1.      Plaintiff brings this action to redress the unlawful employment practices committed against her, including discriminatory treatment towards her due to her gender, age, race and Hispanic ethnicity, as well as unlawful retaliation due to her complaints of being treated unfairly and discriminatorily in violation of § 1981 of the Civil Rights Act of 1866, 42 U.S.C. § 1981 ("Section 1981"), the New York State Human Rights Law, N.Y. Exec. L. §§ 290 *et seq.* ("NYSHRL"),  the New York City Human Rights Law, N.Y. City Admin. Code §§ 8-101, *et. seq.* ("NYCHRL"), the Equal Pay Act, 29 U.S.C. § 206 *et seq.* ("EPA"), the New York Labor Law, § 194 Law *et seq.* ("N.Y. Labor Law"), and the Florida General Labor Regulations, Fla. Stat. Ann. 448.07 *et seq.* ("Florida Labor Law"), and common law torts of intentional and negligent infliction of emotional distress.

## JURISDICTION AND VENUE

2.      Jurisdiction is proper pursuant to 28 U.S.C. §§ 1331 and 1343.  This action involves federal questions concerning the deprivation of Plaintiff's rights under § 1981 and the EPA.  The  Court also has supplemental jurisdiction over Plaintiff's related claims arising under state and local law pursuant to 28 U.S.C. § 1367(a).

3.      Venue is proper pursuant to 28 U.S.C. § 1391 because Defendant resides in this judicial district and conducts substantial business activities and has sufficient contacts with the forum to subject it to personal jurisdiction.

## PARTIES

4.         Plaintiff, a citizen of Florida,  is a former employee of Defendant.  At all relevant

times of employment, Plaintiff worked out of the Morgan Stanley PGA office location at

2000 PGA Blvd, Palm Beach Gardens, Florida until 2014, after which time her base of

operations became the West Palm Beach branch office of Defendant at 777 S. Flagler

Drive, West Palm Beach, FL 33401.  Plaintiff was not restricted to working out of the

West Palm Beach office or the State of Florida.

5.         Plaintiff allocated her time between Florida and New York, generating business

and supporting clients from both Florida and New York.

6.         At all times relevant, Plaintiff resided at 335 Monroe Drive West Palm Beach, FL

33401 while in Florida, and at 150 E. 56th Street, Apt. 6B, New York, NY. 10022, when

in New York.

7.         Plaintiff is a 63-year old Hispanic female.

8.         Defendant is a Delaware corporation that operates in approximately 42 countries

and has approximately 55,000 staff worldwide.  It is a publicly traded company listed on

the New York Stock Exchange and maintains its headquarters and principal place of

business in New York.

## FACTUAL ALLEGATIONS

### I.        Morgan Stanley Diversity at the Palm Beach Complex

9.         On information and belief, historically and through the present day, Defendant's

leadership team at the Palm Beach Complex in the Financial Advisory and Wealth

Management business units are run by predominately White men.

10.         On information, Defendant's Palm Beach Complex is staffed with approximately

80 employees in financial services and professional roles, 80% of whom are predominately White males and 20% females. Other than Plaintiff and one male employee, there were no other POC's employed at the Palm Beach Complex.

11.    On information, Defendant's employees at the time of Plaintiff's employment in the Financial Advisory and Wealth Management departments was comprised of predominately White, male advisors.

## II.    Plaintiff Castillo

### A.  Academic Background

12.    Plaintiff is highly educated. She attended High School in Brooklyn and College in New York. She attended Hunter College in New York before transferring to Pace University, where in 1984, she received her bachelor's degree in Political Science. Plaintiff continued her educational pursuits at New York University, going on to obtain advanced degrees, including a Master's degree in business in 1989 and a post graduate degree in Information Technology in 1996. In 2001, Plaintiff completed the Association Institute and Sales Management program ("AIMSE"), an Executive program at the Wharton School, University of Pennsylvania.

### B.  Employment Background

13.    Plaintiff began her career at UBS in New York City, where she worked from 1990-2002. In 2002, she left UBS to work for the Episcopal Church and the Episcopal Church Foundation in New York until 2005, as Assistant Treasurer. With Investment Committee oversight, plaintiff was the sole manager of the $300M Episcopal Church Foundation endowment. Plaintiff also helped manage the $8B Episcopal Church Pension Fund with primary responsibilities involving financial reporting. In 2005, Plaintiff went

to work for Northern Trust in Stamford, CT, where she helped manage $6B of assets in public and private pension plans until 2011. In 2011, Plaintiff went to work for Morgan Stanley, as a financial advisor in the Financial Advisor Associate program ("FAA").

### C. Career at Morgan Stanley

14.     In 2011, Defendant recruited, interviewed and hired Plaintiff as an FAA advisor at the West Palm Beach office of Defendant. Alfred Lobo (hereinafter, "Lobo") was the hiring manager.

15.     On information, the FAA program is a highly selective, rigorous, demanding, and intense 36-month training and development program. Those that complete the program are prepared to perform as skilled financial advisors.

16.     Plaintiff was supervised by Robert McCabe (hereinafter, "McCabe"), for the entirety of her employment.

17.     The terms of Plaintiff's employment included starting her out in a three-year training program, with a base salary of $70,000 per year, plus commissions and additional compensation detailed in the FAA Compensation & Performance Guide.[3]

18.     In 2015, Plaintiff was awarded a $25,000 performance bonus.

19.     On August 29, 2016, Plaintiff was placed on "warning" for performance, with performance to be reevaluated 90 days hence.

20.     On information, Plaintiff brought in business totaling $102,000 per year in 2016.

21.     McCabe, in his supervisory role, never provided Plaintiff with assistance or resources to help Plaintiff drive business into the firm.

---

[3] Terms of compensation are outlined in the December 20, 2010 offer letter from Alfred F. Lobo, hiring manager, to Plaintiff.

22.     Plaintiff was a solo financial services professional that was not part of a team and for the entirety of her employment, was not permitted to join a team.

23.     Plaintiff was not afforded any Morgan Stanley assistance during the period of her husband's illness, discussed herein.

24.     On January 4, 2017, McCabe, in a meeting with Plaintiff, told Plaintiff that her employment with Defendant would terminate immediately, and that she had two days, until January 6, 2017, to decide if she would accept retirement into the Former Financial Advisor Program ("FFAP"), or involuntary termination.  Plaintiff was 59 at the time of this meeting.

25.     On information, the FFAP program is one that encourages older, top advisors to "hand over their clients to younger ones in return for collecting a percentage of the receiving brokers' payouts for a period of about five years."[4]  In exchange, the former advisor gives up significant rights to younger associates, including their book of business, and is constructively prevented from practicing their profession.

### D.  Discriminatory Employment Practices

26.     On information and belief, Plaintiff was paid not at the same scale or rate as others in the office.  Most of the staff in the West Palm Beach office are White men.  Plaintiff was one of the few women, and one of two Hispanics.  The other Hispanic employee was male.

27.     Plaintiff, in 2012, was asked to attend a conference call between Lobo and other

---

[4] Morgan Stanley 2017 Advisor Compensation Plan, Growth Award and Recognition Programs, p.26; Jed Horowitz and Mason Braswell, Morgan Stanley Gilds Retirement Program for Top Producers (2018), Advisorhub, https://advisorhub.com/exclusive-morgan-stanley-gilds-retirement-program-for-top-producers/.

Morgan Stanley management. During the call, someone asked how much diversity existed in the West Palm Beach branch. Plaintiff observed Lobo respond that Plaintiff was the only POC at the branch.

28.    On information, Hispanics are generally people who speak a common language, are traditionally Catholic, have cohesive families, shared value systems, including respecting elders.

29.    Plaintiff was told by McCabe to go to Miami and cold-call Hispanics to generate revenue because she is Hispanic.

30.    McCabe, during the January 4, 2017 termination meeting with Plaintiff, did not give Plaintiff any reason for the decision to terminate. However, being offered an ultimatum to join the FFAP program for top performers was an attempt to get Plaintiff, an older employee, to turn over her book of business to younger employees, and constructively prevent Plaintiff from practicing her profession or saying anything negative about Defendant.

### E.  Inequities Between Solo Practitioners and Teams

31.    On information and belief, analysts classified as solo practitioners do not enjoy the support network or resources of teams.

32.    On information and belief, teams enjoy corporate incentives that solo practitioners do not.

### F.  Assumption of Debt of Another

33.    Plaintiff married her husband, a White male, in 2003.

34.    Plaintiff's husband was a New York jeweler when they met and in 2009 became a Deputy Sheriff in Florida.

35.     Plaintiff's husband, on January 26, 2015 became ill with heart problems, requiring open heart surgery and other measures.  Due to this illness, Plaintiff's husband was placed into a medically induced coma for approximately two months.  After coming out of the coma, Plaintiff's husband experienced a stroke.

36.     Plaintiff's husband, as a result of his illness, incurred approximately $123,000 of debts related to his dispute with Park Place Condominiums in West Palm Beach, Florida.

37.     In 2015, Park Place Condominiums filed for an assignment for the benefit of creditors and a petition for involuntary bankruptcy, to recover the debt.

38.     Despite the involuntary bankruptcy being expunged, Defendant continues to report this involuntary bankruptcy to the Financial Industry Regulatory Authority ("FINRA") to the detriment of Plaintiff.[5]

39.     Plaintiff, due to her husband's incapacity, made payments to her husband's creditors, to reduce the debt.  The initial debt of $123,000 was reduced to $39,000 by the time Plaintiff was terminated.

40.     Defendant, upon terminating Plaintiff, filed FINRA form U5, the "Uniform Termination Notice for Securities Industry Registration."  The reason for termination was listed as "Terminated – Management discretion not to implement required supervisory procedures."  This reason for termination is unsubstantiated and defamatory and leads prospective employers to believe Plaintiff is "able or likely to cause harm or a compliance risk", all but assuring that she will remain unemployable in the securities industry.

---

[5] The United States Bankruptcy Court, Southern District of Florida, West Palm Beach Division, by Order on October 19, 2016, expunged the involuntary bankruptcy, Case 15-23916-PGH.

41.    Defendant, in the U5 filing, stated that Plaintiff incurred a $123,000 debt, never acknowledging it was an assumed obligation for the benefit of her incapacitated husband, nor did Defendant reflect her outstanding financial management skills in working to reduce the obligation to $39,000, the liability at time of Plaintiff's termination.  As a result of the FINRA U5 showing the large, original debt of her husband, Plaintiff is all but unemployable in the securities industry as it appears that Plaintiff cannot handle her personal finances well.

42.    The Chapter 7 involuntary bankruptcy case in the U.S. Bankruptcy Court for the Southern District of Florida, West Palm Beach Division was expunged by Court Order in case No. 15-23916-PGH on October 19, 2016, yet the Defendant ignored this information and refused to revise the FINRA U5, making Plaintiff constructively unemployable in the securities, industry resulting in great financial and emotional harms to Plaintiff.

43.    Plaintiff's FINRA U5 form was filed by Defendant on September 21, 2017.

### FIRST CAUSE OF ACTION
(Discrimination in Violation of § 1981)
*Against Defendant*

44.    Plaintiff repeats and reincorporate by reference each allegation in the foregoing paragraphs as though fully set forth herein.

45.    By the actions detailed above, Defendant has discriminated against Plaintiff in violation of 42 U.S. Code § 1981 by, among other things, denying her the equal terms and conditions of employment, treating her differently because of her race or racial identity as a Hispanic, and by subjecting her to a hostile work environment.

46.    As a direct and proximate result of Defendant's unlawful and discriminatory conduct in violation of § 1981, Plaintiff has suffered, and continues to suffer, monetary

and economic harm, for which she is entitled to an award of damages.

47.     As a direct and proximate result of Defendant's unlawful and discriminatory conduct in violation of § 1981, Plaintiff has suffered, and continues to suffer, mental anguish and severe emotional distress, for which she is entitled to an award of damages.

48.     Defendant's unlawful and discriminatory actions constitute malicious, willful and wanton violations of § 1981, for which Plaintiff is entitled to an award of punitive damages.

## SECOND CAUSE OF ACTION
(Retaliation in Violation of § 1981)
*Against Defendant*

49.     Plaintiff repeats and reincorporate by reference each allegation in the foregoing paragraphs as though fully set forth herein.

50.     By the actions detailed above, among others, Defendant has retaliated against Plaintiff based on her protected activities in violation of § 1981, including, most recently, terminating Plaintiff's employment.

51.     As a direct and proximate result of Defendant's unlawful and retaliatory conduct in violation of § 1981, Plaintiff has suffered, and continues to suffer, monetary and economic harm, for which she is entitled to an award of damages.

52.     As a direct and proximate result of Defendant's unlawful and retaliatory conduct in violation of § 1981, Plaintiff has suffered, and continues to suffer, mental anguish and severe emotional distress, for which she is entitled to an award of damages.

53.     Defendant's unlawful and retaliatory actions constitute malicious, willful and wanton violations of § 1981, for which Plaintiff is entitled to an award of punitive damages.

## THIRD CAUSE OF ACTION
*(Discrimination in Violation of NYSHRL)*
*Against Defendant*

54.     Plaintiff repeats and reincorporate by reference each allegation in the foregoing

paragraphs as though fully set forth herein.

55.     By the actions detailed above, Defendant has discriminated against Plaintiff in

violation of the N.Y. Exec. Law § 296, *et. seq.*, NYSHRL by, among other things,

denying her the equal terms and conditions of employment because of her race or racial

identity, ethnicity, age, and gender, and by subjecting Plaintiff to a hostile work

environment.

56.     As a direct and proximate result of Defendant's unlawful discriminatory conduct

in violation of the NYSHRL, Plaintiff has suffered, and continues to suffer, monetary and

economic harms, for which she is entitled to an award of monetary damages and other

relief, in addition to reasonable attorneys' fees and expenses.

57.     As a direct and proximate result of Defendant's unlawful discriminatory conduct

in violation of the NYSHRL, Plaintiff has suffered, and continues to suffer, mental

anguish and severe emotional distress, for which she is entitled to an award of monetary

damages and other relief.

58.     Defendant's unlawful and discriminatory actions constitute malicious, willful and

wanton violations of the NYSHRL, for which Plaintiff is entitled to an award of punitive

damages.

## FOURTH CAUSE OF ACTION
*(Retaliation in Violation of NYSHRL)*
*Against Defendant*

59.     Plaintiff repeats and reincorporate by reference each allegation in the foregoing

paragraphs as though fully set forth herein.

60.     By the actions detailed above, Defendant has retaliated against Plaintiff based on her protected activities in violation of the NYSHRL, including, most recently, terminating Plaintiff's employment.

61.     As a direct and proximate result of Defendant's unlawful retaliatory conduct in violation of the NYSHRL, Plaintiff has suffered, and continues to suffer, monetary and economic harm, for which she is entitled to an award of damages, in addition to reasonable attorneys' fees and expenses.

62.     As a direct and proximate result of Defendant's unlawful retaliatory conduct in violation of the NYSHRL, Plaintiff has suffered, and continues to suffer, mental anguish and severe emotional distress, for which she is entitled to an award of monetary damages.

63.     Defendant's unlawful and retaliatory actions constitute malicious, willful and wanton violations of the NYSHRL, for which Plaintiff is entitled to an award of punitive damages.

### FIFTH CAUSE OF ACTION
*(Discrimination in Violation of NYCHRL)*
*Against Defendant*

64.     Plaintiff repeats and reincorporate by reference each allegation in the foregoing paragraphs as though fully set forth herein.

65.     By the actions detailed above, Defendant has discriminated against Plaintiff in violation of NYC Admin. Code, Title 8, § 8-101, *et seq.*, the NYCHRL by, among other things, denying her the equal terms and conditions of employment because of her racial identity, ethnicity, age, and gender, and by subjecting her to a hostile work environment.

66.     As a direct and proximate result of Defendant's unlawful discriminatory conduct

in violation of the NYCHRL, Plaintiff has suffered, and continues to suffer, monetary and economic harm, for which she is entitled to an award of monetary damages and other relief, in addition to reasonable attorneys' fees and expenses.

67.     As a direct and proximate result of Defendant's unlawful discriminatory conduct in violation of the NYCHRL, Plaintiff has suffered, and continues to suffer, mental anguish and severe emotional distress, for which she is entitled to an award of monetary damages and other relief.

68.     Defendant's unlawful and discriminatory actions were done with willful negligence, or recklessness, or a conscious disregard of the rights of Plaintiff or conduct so reckless as to amount to such disregard of Plaintiff's protected rights under the NYCHRL, for which Plaintiff is entitled to an award of punitive damages.

### SIXTH CAUSE OF ACTION
*(Retaliation in Violation of NYCHRL)*
*Against Defendant*

69.     Plaintiff repeats and reincorporate by reference each allegation in the foregoing paragraphs as though fully set forth herein.

70.     By the actions detailed above, among others, Defendant has retaliated against Plaintiff based on her protected activities in violation of the NYCHRL, including, most recently, terminating Plaintiff's employment.

71.     As a direct and proximate result of Defendant's unlawful retaliatory conduct in violation of the NYCHRL, Plaintiff has suffered, and continues to suffer, monetary and economic harm, for which she is entitled to an award of damages, in addition to reasonable attorneys' fees and expenses.

72.     As a direct and proximate result of Defendant's unlawful retaliatory conduct in

violation of the NYCHRL, Plaintiff has suffered, and continues to suffer, mental anguish

and severe emotional distress, for which she is entitled to an award of damages.

73.        Defendant's unlawful and retaliatory actions were done with willful negligence,

or recklessness, or a conscious disregard of the rights of Plaintiff or conduct so reckless

as to amount to such disregard of Plaintiff's protected rights under the NYCHRL, for

which Plaintiff is entitled to an award of punitive damages.

### SEVENTH CAUSE OF ACTION
(Violations of the Equal Pay Act)
*Against Defendant*

74.        Plaintiff repeats and reincorporate by reference each allegation in the foregoing

paragraphs as though fully set forth herein.

75.        During the period of Plaintiff's employment,  Defendant is subject to the

provisions of the Equal Pay Act, 29 U.S.C. § 206 *et seq*. During that time, Defendant

required Plaintiff to perform the same or substantially the same job position as male,

primarily White, employees, requiring equal skill, effort, and responsibility under similar

working conditions at the same establishment, and paid Plaintiff at a rate of pay,

including salary and bonus, less than male, primarily White, employees. The differential

rate of pay was not part of or occasioned by a seniority system, merit system, a system

based on the quantity or quality of production, or upon a factor other than gender.

76.        Defendant engaged in patterns, practices and policies of employment that

discriminated against Plaintiff on the basis of gender, age, and race or racial identity by

paying Plaintiff a lesser rate of pay, including salary and bonus than that paid to male,

primarily White, employees performing the same or substantially similar job duties which

require equal skill, effort, and responsibility, and under the same working conditions and

at the same establishments.

77.    The discriminatory employment practices that disproportionately affect Hispanic female employees causes them to be paid less than similarly situated men at Defendant and exist in connection with decision making about:

    a.  Compensation, including salary base pay, and discretionary bonuses;

    b.  Hiring;

    c.  Development;

    d.  Advancement;

    e.  Opportunities for mentorship;

    f.  Promotions;

    g.  Work assignments;

    h.  Levels of responsibilities;

    i.  Client introductions;

    j.  Sales pitch participation;

    k.  Opportunities to socialize at company events;

    l.  Opportunities to socialize at company events with clients;

    m. Demotions;

    n.  Failing to prevent, address, properly investigate, remediate, educate about claims of discrimination against Hispanic employees;

    o.  Terminations, including through reductions in force; and

    p.  Corporate incentives.

78.    The subjective decision-making about the items listed above regularly involve bias and unconscious bias by individuals at Defendant that have the power and authority

to render such decisions.

79.     The systematic discriminatory practices that disproportionately affect Hispanic female employees' compensation as compared to similarly situated men at Defendant include, among other things:

   a. Discretionary hiring practices that disfavor Hispanic female employees;

   b. Discretionary compensation policies that disfavor Hispanic female employees;

   c. Discretionary performance evaluation systems that disfavor Hispanic female employees.

   d. Discretionary promotion systems that disfavor Hispanic female employees; and

   e. Discretionary termination practices that disfavor Hispanic female employees.

80.     The systematic discriminatory practices that disproportionately affect Hispanic female employees allow managers and senior executives, predominantly White, to perpetuate race, age, racial identity or ethnicity, and gender discrimination against Hispanic female employees that has and continues to cause them to experience the following, among other things:

   a. Unequal compensation for substantially the same work as compared to male, primarily White employees;

   b. Unequal participation in corporate incentive programs as compared to other employees;

   c. Unequal performance evaluations as compared to male, primarily White employees;

   d. Unequal bonuses for substantially the same work as compared to male, primarily White employees;

   e. Unequal benefits and other forms of compensation as compared to male, primarily White employees;

   f. Unequal opportunities for business development opportunities as compared to

male, primarily White employees;

g.  Unequal opportunities for advancement as compared to male, primarily White employees; and

h.  Unequal opportunity to participate in teams and benefit from the resources afforded to team members.

81.     The above conduct resulted in subjecting Hispanic female employees to lesser terms and conditions of employment.

82.     Plaintiff alleges claims under the Equal Pay Act for the period of time she was an employee of Defendant, during the applicable liability or statute of limitations period, up to and including the date of any judgment in this case.

83.     As a direct and proximate result of Defendants' unlawful and discriminatory conduct in violation of the Equal Pay Act, Plaintiff has suffered, and continues to suffer, harm for which she is entitled to an award of monetary damages and other relief.

84.     Plaintiff is further entitled to liquidated damages, reasonable costs and attorneys' fees.

## EIGHTH CAUSE OF ACTION
(Violations of the N.Y. Labor Law)
*Against Defendant*

85.     Plaintiff repeats and reincorporate by reference each allegation in the foregoing paragraphs as though fully set forth herein.

86.     Plaintiff worked approximately half of her time in New York.  A portion of her earnings are derived from work and activities taking place in New York subjecting Defendant to the provisions of N.Y. Lab. Law § 194, ("N.Y. Labor Law").

87.     Defendants required Plaintiff to perform the same or substantially the same job position as male, primarily White, employees, requiring equal skill, effort, and

responsibility under similar working conditions at the same establishment, and paid Plaintiff at a rate of pay, including salary and bonus, less than such male employees. The differential rate of pay was not part of or occasioned by a seniority system, merit system, a system based on the quantity or quality of production, or upon a factor other than gender or race, such as education, training, or experience.

88.      Defendant engaged in patterns, practices and policies of employment that discriminated against Plaintiff on the basis of race, age, racial identity, ethnicity, and gender by paying Plaintiff a lesser rate of pay, including salary, bonus, and other incentive compensation than similarly situated male employees performing the same or substantially similar job duties which require equal skill, effort, and responsibility, and under the same working conditions and at the same establishment.

89.      By the actions described above, among others, Defendants have violated N.Y. Labor Law.

90.      As a direct and proximate result of Defendant's unlawful and discriminatory conduct in violation N.Y. Labor Law, Plaintiff has suffered, and continues to suffer, harm for which she is entitled to an award of monetary damages and other relief.

91.      Plaintiff is further entitled to liquidated damages, reasonable costs and attorneys' fees.

## NINTH CAUSE OF ACTION
(Defamation)
*Against Defendant*

92.      Plaintiff repeats and reincorporate by reference each allegation in the foregoing paragraphs as though fully set forth herein.

93.      As a direct and proximate result of Defendant's false and misleading information

published in her FINRA form U5, knowing it was false or misleading, exposed Plaintiff to "public contempt, ridicule, aversion or disgrace," depriving her of future employment in the securities industry.

94.        Plaintiff is entitled to all damages, as permitted by law, and reasonable costs and attorneys' fees.

## TENTH CAUSE OF ACTION
(Intentional Infliction of Emotional Distress)
*Against Defendant*

95.        Plaintiff repeats and reincorporate by reference each allegation in the foregoing paragraphs as though fully set forth herein.

96.        Defendant, by its actions in intending to create a hostile work environment for Plaintiff at a time when Defendant was aware of her husband's life-threatening illness and her role as his primary caregiver was extreme and outrageous.  Defendant's reckless disregard for Plaintiff's rights and feelings, and with deliberate indifference to the certainty that Plaintiff would suffer emotional distress, intentionally caused severe emotional distress.

97.        Defendant, aware that the courts dismissed the involuntary bankruptcy petition resulting from her husband's incapacity, with extreme disregard, included it anyway on Plaintiff's FINRA U5, compounding the severe mental anguish, humiliation, and severe emotional distress she was already experiencing by being terminated, caused severe emotional distress.

98.        Defendant, aware that the amount of Plaintiff's assumed debts of her incapacitated husband of approximately $123,000 was reduced to $39,000, with extreme disregard, deliberately included the original amount of $123,000 on Plaintiff's FINRA

U5 anyway, making it all but certain that Plaintiff would appear to look to prospective employers as an individual incapable of managing her own finances, rendering her unemployable in the securities industry, causing severe emotional distress.

99.       As a direct and proximate result of Defendant's actions, Plaintiff has suffered and will continue to suffer mental anguish, humiliation, and severe emotional distress.

100.       Plaintiff is entitled to all damages, as permitted by law, and reasonable costs and attorneys' fees.

## ELEVENTH CAUSE OF ACTION
(Negligent Infliction of Emotional Distress)
*Against Defendant*

101.       Plaintiff repeats and reincorporate by reference each allegation in the foregoing paragraphs as though fully set forth herein.

102.       Defendant, by its actions in failing to cease creating a hostile work environment for Plaintiff at a time when Defendant was aware of her husband's life-threatening illness and her role as his primary caregiver was extreme and outrageous. Defendant's reckless disregard for Plaintiff's rights and feelings, and with deliberate indifference to the certainty that Plaintiff would suffer emotional distress, was negligent in continuing to treat Plaintiff as it did, with knowledge that it would inflict severe emotional distress.

103.       As a direct and proximate result of Defendant's actions, Plaintiff has suffered and will continue to suffer mental anguish, humiliation, and severe emotional distress.

104.       Plaintiff is entitled to all damages, as permitted by law, and reasonable costs and attorneys' fees.

## TWELFTH CAUSE OF ACTION
(Violations of Florida General Labor Regulations)
*Against Defendant*

105.     Plaintiff repeats and reincorporate by reference each allegation in the foregoing

paragraphs as though fully set forth herein.

106.     Plaintiff worked approximately half of her time in Florida.

107.     Defendant is subject to the provisions of Florida General Labor Regulations, Fla.

Stat. Ann. 448.07 *et seq.* ("Florida Labor Law").

108.     Defendants required Plaintiff to perform the same or substantially the same job

position as male, primarily White, employees, requiring equal skill, effort, and

responsibility under similar working conditions at the same establishment, and paid

Plaintiff at a rate of pay, including salary and bonus, less than such male employees. The

differential rate of pay was not part of or occasioned by a seniority system, merit system,

a system based on the quantity or quality of production, or upon a factor other than

gender or race, such as education, training, or experience.

109.     Defendant engaged in patterns, practices and policies of employment that

discriminated against Plaintiff on the basis of race, age, racial identity, ethnicity, and

gender by paying Plaintiff a lesser rate of pay, including salary, bonus, and other

incentive compensation than similarly situated male employees performing the same or

substantially similar job duties which require equal skill, effort, and responsibility, and

under the same working conditions and at the same establishment.

110.     By the actions described above, among others, Defendants have violated the

Florida Labor Law.

111.     As a direct and proximate result of Defendant's unlawful and discriminatory

conduct in violation of the Florida Labor Law, Plaintiff has suffered, and continues to suffer, harm for which she is entitled to an award of monetary damages and other relief.

112.      Plaintiff is further entitled to liquidated damages, reasonable costs and attorneys' fees.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs request a judgement against the Defendant containing the following relief:

A. Awarding damages, compensatory and punitive damages, to Plaintiff in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for all monetary and economic damages;

B. Awarding Plaintiff her costs and any reasonable attorney's fees; and

C. Granting Plaintiff further and other relief as the Court may deem just and appropriate under the circumstances.

## JURY DEMAND

Plaintiffs hereby demand a trial by jury on all issues of fact and damages so triable.

Dated: New York, New York
       August 10, 2020

Respectfully submitted,

**LEONARD ZACK & ASSOCIATES**

By: _____
        Leonard Zack, Esq.

Attorneys for Plaintiff
505 Park Avenue, 18th Floor
New York, NY 10022
(212) 754-4050 (voice)
leonardzack@lzack.com (email)

Page 23 of 23